IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

R. ALEXANDER ACOSTA,
Acting Secretary of Labor,
United States Department of Labor,

    Plaintiff,

vs.

CARLOS CALDERON, et al.,

    Defendants.

Civil Action No. ADC-16-0964

## MEMORANDUM OPINION

R. Alexander Acosta ("Plaintiff"), Acting Secretary of Labor, moves this Court for summary judgment in favor of Plaintiff and against Defendants Carlos Calderon and C.R. Calderon Construction Company ("Defendants") ("Plaintiff's Motion") (ECF No. 23).[1] Plaintiff seeks a ruling from the Court that Defendants, in their capacity as fiduciaries of the Contractors & Employees 401(k) Profit Sharing Plan (the "Plan"), failed to forward employee contributions and remit mandatory prevailing wage employer contributions to the Plan in violation of Title I of the Employee Retirement and Income Security Act of 1974 ("ERISA"), as codified and amended in 29 U.S.C. § 1001, *et seq.* Defendants filed an opposition to Plaintiff's motion for summary judgment and cross-motion for summary judgment in favor of Defendants and against Plaintiff ("Defendants' Cross-Motion") (ECF No. 29).

---

[1] A civil action for appropriate relief under ERISA may be brought, as here, by the Secretary of the Department of Labor. 29 U.S.C. § 1132(a)(2). Pursuant to Federal Rule of Civil Procedure 25(d), the Acting Secretary of Labor R. Alexander Acosta is substituted for his predecessors Edward C. Hughley and Thomas E. Perez as the Plaintiff in this action.

1

After considering the motions, and responses thereto (ECF Nos. 23, 29, 32), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that there is no genuine issue of material fact as to the claims asserted. For the reasons that follow, the Court will GRANT IN PART AND DENY IN PART Plaintiff's Motion for Summary Judgment (ECF No. 23) and GRANT IN PART AND DENY IN PART Defendants' Cross-Motion for Summary Judgment (ECF No. 29).

## FACTUAL BACKGROUND

Defendant C.R. Calderon Construction, Inc. ("CRC"), a Maryland corporation, was founded in 1994 by Defendant Carlos Calderon ("Calderon") and his wife Ana Calderon. Calderon is the president and part-owner of CRC. During the time period relevant to this action, CRC was engaged in the construction business providing drywall and ceiling installation services on both public and private properties. As a subcontractor for drywall and ceiling work, CRC bid for jobs from general contractors and owners. The submitted bids included all labor, material, and equipment costs associated with a particular job. In calculating its labor costs for a job, CRC typically employed the prevailing wage scale.

On or about January 1, 2005, CRC adopted the Plan. *See* ECF No. 23-11. The purpose of the Plan was to provide benefits for the exclusive benefit of plan participants—the employees of the CRC—and their beneficiaries. Under the terms of the Plan, participants were permitted to contribute a portion of their compensation in the form of elective salary deferrals to be deducted and withheld from employee salaries and remitted to the Plan. The Plan also required that the employer, CRC, make mandatory prevailing wage employer contributions. The Plan was to be

primarily funded by elective employee salary deferrals and mandatory employer prevailing wage contributions.

The following outlines CRC's process for handling the funds associated with its employee benefit plan. CRC first submitted an invoice to the owner or general contractor of a specific job. Once the invoice was approved, CRC received a single check for the total billed amount. Notably, neither the invoices CRC provided to contractors nor the checks issued back to them distinguished between labor, material, and equipment costs. Upon receipt of a check from a contractor, CRC would deposit the payment received into its designated operating account. Funds from CRC's operating account were then transferred to CRC's designated payroll account to cover employee payroll. Thereafter, any remaining available operating account funds were used to fund CRC's employee benefit plan.

The underlying material facts, which are not disputed by the parties, tend to establish that, from January 2012 through December 2012, CRC deducted $35,235.00 from participant compensation for employee contributions which subsequently were not remitted into the Plan. In addition, from January 2012 through December 2013, CRC failed to collect and remit to the Plan $346,523.12 in mandatory prevailing wage employer contributions.

### PROCEDURAL BACKGROUND

On April 1, 2016, Plaintiff initiated this action pursuant to ERISA, 29 U.S.C. § 1001 *et seq.* See ECF No. 1 ("the Complaint"). The Complaint alleged that Defendants, in their capacity as fiduciaries of the Plan, failed to forward employee contributions and remit mandatory prevailing wage employer contributions to the Plan in violation of Title I of ERISA.

3

On March 13, 2017, Plaintiff filed Plaintiff's Motion (ECF No. 23) seeking summary judgment on his breach-of-fiduciary-duty claims against Defendants pursuant to ERISA.[2] On April 12, 2017, Defendants filed Defendants' Cross-Motion (ECF No. 29) seeking summary judgment on Plaintiff's ERISA claims against them. On May 10, 2017, Plaintiff filed a reply to Defendants' Cross-Motion (ECF No. 32). This matter is now fully briefed and the Court has reviewed each party's cross-motion for summary judgment. For the foregoing reasons and pursuant to Federal Rule of Civil Procedure 56(d), Plaintiff's Motion (ECF No. 23) is granted in part and denied in part and Defendant's Cross-Motion (ECF No. 29) is granted in part and denied in part.

## STANDARD OF REVIEW

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could

---

[2] On March 22, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

In evaluating a motion for summary judgment, the Court must "view the facts in the light most favorable to the nonmoving party." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2017 (2014); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

As noted, both parties moved for summary judgment. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to

5

determine whether either of the parties deserves judgment as a matter of law," and in considering each motion "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted). The fact that both sides moved for summary judgment "neither establish[es] the propriety of deciding a case on summary judgment, nor establish[es] that there is no issue of fact requiring that summary judgment be granted to one side or another." *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 511 n.7 (4th Cir. 2002) (internal citations and quotation marks omitted).

## ANALYSIS

Plaintiff seeks summary judgment in his favor, arguing that Defendants were fiduciaries of the Plan under ERISA, that Defendants violated their fiduciary duties, and that, as a result of these violations, the Plan incurred losses. ECF No. 23-1 at 3. Defendants' Cross-Motion seeking summary judgment in their favor is based on the same issues which constitute Plaintiff's grounds for summary judgment. Defendants contend that they did not violate any fiduciary responsibility in regard to the Plan assets because they were not fiduciaries to the Plan and they did not have money which could be contributed to and become assets of the Plan. ECF No. 29 at 5–6.

Under ERISA § 404(a), a fiduciary of an employee benefit plan must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries[,] and[] for the exclusive purpose of[] providing benefits to participants and their beneficiaries[] and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)–(ii). A fiduciary is also required to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

6

matters would use in the conduct of an enterprise of a like character and with like aims" and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. 29 U.S.C. § 1104(a)(1)(B), (D).

Section 409(a) of ERISA imposes liability for breach of fiduciary duty:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a). Thus, to establish Defendants' liability for breach of fiduciary duty, Plaintiff must show that: (1) the Plan was an employee benefit plan under ERISA; (2) the Defendants were fiduciaries of the Plan; and (3) the Defendants breached their duties under ERISA, resulting in losses to the Plan.

First, Defendants concede, and the evidence supports, that the Plan was an employee benefit plan, the purpose of which was to provide benefits for employees of CRC and their beneficiaries. *See* ECF No. 23-3 at 1–2; ECF No. 29-1 at 1. Defendants additionally admit that CRC failed to collect $35,235.00 in employee contributions from January 2012 through December 2012 and to remit $346,523.12 in mandatory employer prevailing wage contributions to the Plan from January 2012 through December 2013. ECF No. 23-3 at 3–5. As a result, the only remaining issue for trial is whether or not Defendants were fiduciaries of the Plan.

A party is a fiduciary, and consequently owes duties to an ERISA plan, if he falls under one of two statutory categories. The first category of ERISA fiduciaries are "named" fiduciaries, which are parties explicitly listed as fiduciaries in the plan instrument. 29 U.S.C. § 1102(a)(2);

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993). The second category of ERISA fiduciaries is that of "unnamed" or *de facto* fiduciaries. A party will be considered a *de facto* fiduciary if:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A).

In the present case, none of the Plan documents submitted by Plaintiff expressly designate Defendants as fiduciaries of the Plan. Plaintiff contends, however, that both Calderon and CRC exercised authority and control over assets of the Plan as *de facto* fiduciaries. ECF No. 23 at 5–7. In order to show that Defendants were *de facto* fiduciaries, Plaintiff must establish both that the unpaid contributions were in fact plan assets and that Defendants exercised authority or control over those assets. Plaintiff's argue that CRC was a fiduciary as the Plan administrator and that Calderon was a *de facto* fiduciary due to his exercise of discretionary authority and control over the Plan assets and the administration of the Plan. *Id.* at 6–7. Defendants contend that Plaintiff's claim should fail because the withholdings "never became assets of the Plan." ECF No. 29 at 2. Moreover, Defendants argue that, although Calderon "made business decisions as to the income received into CRC" he did so "for the continued viability of CRC and not as a fiduciary of the Plan." *Id.* Plaintiff, in turn, rejects Defendants' argument, noting that "Defendants were required both contractually and by prevailing wage law to collect mandatory prevailing wage employer contributions" and that the "right to collect the employer contributions is, in and of itself, a Plan asset, where the employee has a right to the

contribution as a matter of law." ECF No. 32 at 4 (citing *Solis v. Explore Gen.*, 2011 WL 6749769, at *5 (E.D.Cal. 2011)).

### A. Defendants Had Discretionary Authority And Control Over The Unremitted Employee And Employer Contributions.

Defendants argue that they are not fiduciaries of the Plan because the management of the Plan was delegated by the Plan Administrator. ECF No. 29 at 4. Regardless, Defendants can, however, be considered fiduciaries if they exercised discretionary authority or control over the disposition of the unpaid contributions, in a *de facto* fiduciary capacity. In the present case, both CRC and Calderon in his individual capacity were entrusted with control of company finances which included employee and employer contributions. Moreover, Calderon has repeatedly admitted that it was his obligation to pay both employee and employer contributions to the Plan and that he exercised the authority to decide whether or not those contributions were remitted to the Plan. *See, e.g.*, ECF No. 23-3 at 2–3 ("Calderon made the decisions as to whether or not to remit employee or mandatory prevailing wage employer contributions to the Plan. . . . Calderon was aware that he had a duty to remit employee contributions to the Plan.").[3] In *Phelps v. C.T. Enterprises, Inc.*, the Fourth Circuit stated that where "an employer is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA." 394 F.3d 213, 219 (4th Cir. 2005) (citing *Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Va.*, 867 F.Supp. 398, 405 (E.D.Va. 1994)). Thus, the Court finds that Defendants exercised discretionary authority and control over the unremitted employee and employer contributions.

---

[3] Defendants did not dispute these facts. ECF No. 29-1 at 1.

The Court's analysis, however, does not end there. The Court still must determine whether the employee contributions and mandatory employer prevailing wage contributions not paid to the Plan constituted "plan assets" as recognized by ERISA.

**B. Plan Assets Under ERISA Include Employee Contributions, But Not Unpaid Mandatory Employer Prevailing Wage Contributions.**

Title 29 of the Code of Federal Regulations provides that unpaid deductions from employees' wages are assets of ERISA funds. 29 C.F.R. § 2510.3–102(a)(1) ("[T]he assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets."). Accordingly, the Court finds that the contributions in the amount of $35,235.00 withheld from the employees' wages but not paid to the Plan constituted "plan assets."

Unlike employee contributions from employee wage deductions, there is no regulation which specifies when employer contributions to ERISA funds become plan assets. *Int'l Painters & Allied Trades Indus. Pension Fund v. Clayton B. Obersheimer, Inc.*, No. ELH-12-1000, 2013 WL 594691, at *4 (D.Md. Feb. 13, 2013) (citing *In re Halpin*, 566 F.3d 286, 289 (2d Cir. 2009)). The Department of Labor has issued informal guidance taking the position that "employer contributions become an asset of the plan only when the contribution has been made." *Id.* (quoting *In re Halpin*, 566 F.3d at 289). The circuit courts which have decided this issue have adopted the Department of Labor's interpretation and held that unpaid employer contributions do not constitute "plan assets." *See, e.g.*, *In re Halpin*, 566 F.3d at 290; *In re Bucci*, 493 F.3d 635, 642–44 (6th Cir. 2007); *Bos v. Bd. of Trs.*, 795 F.3d 1006, 1012 (9th Cir. 2015), *cert. denied*, 136

S.Ct. 1452 (2016); *In re Luna*, 406 F.3d 1192, 1201 (10th Cir. 2005); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003).

In *United States v. Jackson*, however, the Fourth Circuit adopted the contrary position, affirming a district court's ruling that "unpaid employer contributions become 'credits' and are ERISA 'plan assets' when they are 'due and payable to the plan.'" 524 F.3d 532, 543 (4th Cir. 2008) (quoting the district court), *vacated*, 555 U.S. 1163 (2009). After the defendants in *Jackson* petitioned for certiorari, however, the United States changed its position and urged the Supreme Court to summarily vacate the Fourth Circuit's decision and remand for reconsideration on the basis of the Department of Labor's interpretation that employer contributions don't become plan assets until they have been paid. *See* Brief for the United States on Petition for Writ of Certiorari, at 25, *Jackson*, 555 U.S. 1163 (No. 08-263). The Supreme Court did so, *see* 555 U.S. at 1163, and on remand, the Fourth Circuit vacated and remanded to the district court without expressing any further view on the substantive issue. *See United States v. Jackson*, 336 F.App'x 282, 282–84 (4th Cir. 2009). The Fourth Circuit has not weighed in on the Department of Labor's interpretation since *Jackson*.

Despite the Department's interpretation, several circuits addressing the issue have developed a general exception that unpaid employer contributions may be considered plan assets under ERISA if specifically provided for in the plan agreement. *See e.g.*, *In re Halpin*, 566 F.3d at 290–91 (ruling that employer contributions to an ERISA plan did not become plan assets until they were paid, but noting that "[the employer] and the trustees were free to contractually provide for some other result"); *In re Bucci*, 493 F.3d at 642–44 (finding that unpaid employer contributions qualified as ERISA plan assets, where the trust agreements defined the assets as "all funds received or due to be received by the Trustees in the form of Employer

Contributions"); *In re Luna*, 406 F.3d at 1201 ("conclude[ing] that the contractual right to the unpaid contributions is an 'asset' under ERISA"); *ITPE Pension Fund*, 334 F.3d at 1013 ("The proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise." (footnotes omitted)).

Defendants contend that their employer contributions never became assets to the Plan because the funds that should have been deposited to the Plan were not available and set aside for deposit into the Plan—in other words, that the funds were never paid into the Plan. ECF No. 29 at 2. While we agree with Defendants that these are unpaid contributions which are not plan assets, our analysis does not end until we consider the language of the Plan agreement. Here, the Trust Agreement governing the Plan does not expressly state that unpaid employer contributions are assets of the Plan. The Plan document states that the employer, CRC, agrees to make contributions, but it does not require that the trustee of the assets collect contributions from CRC. ECF No. 23-10 at 77–78. Additionally, the Plan document refers to "[a]mounts contributed," *id.* at 13, from which the Court may "infer that the monies have to be paid into the funds before they become assets of the plan," *W. Va. Laborers' Pension Tr. Fund v. Owens Pipeline Serv., LLC*, No. 2:10-CV-00131, 2011 WL 5865461, at *2 (S.D.W.Va. Nov. 18, 2011) (quoting *In re Luna*, 406 F.3d at 1201); *cf. W. Va. Laborers' Pension Tr. Fund*, 2011 WL 5865461, at *5 (holding that "due and owing" language in a plan agreement meant that employer contributions not paid to ERISA funds were plan assets). Accordingly, the Court finds that the $346,523.12 mandatory employer prevailing wage contributions not paid to the Plan did not constitute "plan assets." Therefore, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that Defendants breached their duty as *de facto*

fiduciaries to Plan participants with regard to the employee contributions, but not the employer contributions.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that there is no genuine issue of material fact with regard to whether Defendants breached their fiduciary duty to the participants of the Plan. Therefore, pursuant to Rule 56(d), Plaintiff's Motion for Summary Judgment (ECF No. 23) is granted in part and denied in part and Defendant's Cross-Motion (ECF No. 29) is granted in part and denied in part. The Court additionally requests that the parties compute the appropriate pre-judgment penalties and interest as to the employee contributions and submit a proposed Judgment Order to the court for entry.

A separate order will follow.

Date: 11 September 2017

A. David Copperthite
United States Magistrate Judge